UNITED STATES, Appellee

v

PETER H. GREEN, Private, U. S. Marine Corps Reserve, Appellant

10 USCMA 561, 28 CMR 127

No. 12,832

Decided August 7, 1959

*Commander John P. Gibbons,* USN, argued the cause for Appellant, Accused. With him on the brief were *Captain H. H. Brandenburg,* USN, and *Lieutenant Sherwin Seldin,* USNR.

*Major Ted H. Collins,* USMC, argued the cause for Appellee, United States. With him on the brief were *Commander Craig McKee,* USN, and *Lieutenant Commander William O. Miller,* USN.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused stands convicted of an unauthorized absence and the wrongful and malicious publication of two separate statements disparaging the Marine Corps, in violation, respectively, of Articles 86 and 134, Uniform Code of Military Justice, 10 USC §§ 886, 934. His sentence, as reduced by the board of review, included a bad-conduct discharge and confinement at hard labor for six months.

On receiving a copy of the decision of the board of review on January 2, 1959, the accused filed a request for immediate execution of the bad-conduct discharge and his release from the Marine Corps. In the request he indicated he had had "fully explained" to him, and he understood, his right to petition this Court for grant of review. He noted that while he did not "now intend to appeal," he understood he could later change his mind and appeal within thirty days from the date of his receipt of the board of review's decision, even if the request for execution of his discharge was granted. He further said he had discussed the matter with counsel of his own choice. Four days earlier the accused had executed a form entitled "Waiver of Restoration" which was addressed to the Secretary of the Navy. The form recites that he "waives" his right to restoration and requests execution of the discharge adjudged by the court-martial. It also sets out that if the punitive discharge is executed the accused knows he might "forfeit all rights as a veteran" and that he could "expect to encounter substantial prejudice in civilian life."

In accordance with the accused's request, the bad-conduct discharge was executed on January 3, 1959. On January 15 the accused deposited in military channels "a request for petition for grant of review" by this Court. The question before us is whether under the foregoing circumstances the execution of the bad-conduct discharge was legal.

A short time ago we had a similar but not identical situation before us. In United States v Doherty, 10 USCMA 453, 28 CMR 19, the request for execution of the discharge adjudged by the court-martial specifically provided that if the accused petitioned this Court for review any "action . . . effecting his discharge . . . will be revoked" and the accused would be regarded as

**563**

"a member of the Army." We concluded that it was not necessary to determine "the exact legal effect of the act of separation" or the character of the accused's discharge. Those matters are now present for decision.

With certain exceptions not applicable here, this Court cannot automatically review on behalf of the accused the record of his conviction. However wide the range of our review (See Carney, *The United States Court of Military Appeals*, 5 Fed Bar News 100 (April 1958)), the accused must first petition this Court before we can consider his case. Article 67(b)(3), Uniform Code of Military Justice, 10 USC § 867. A petition for review must be filed within thirty days after the accused is notified of the decision of the board of review. Article 67(c), Uniform Code, supra; Rule 24, Rules of Practice and Procedure, United States Court of Military Appeals, revised January 1, 1959. If the accused does not petition within that period and there are no special circumstances (see Feld, Manual of Courts-Martial Practice and Appeal, § 122), the conviction is final and the sentence can be fully executed. Articles 71(c) and 76, Uniform Code of Military Justice, 10 USC §§ 871, 876. After affirmance of his conviction by a board of review, an accused may not desire to appeal to this Court. Must he, nonetheless, wait until expiration of ' the thirty-day appeal period before he can voluntarily accept a discharge issued at his specific request, and in accordance with his desire to terminate his military status as speedily as possible? There are many situations in which he can be materially benefited by earlier release. For example, he might have entered a plea of guilty and been sentenced to a discharge and a short period of confinement. If the period of confinement is ended by the time review is completed by the board of review, and the accused believes he has no "good cause" for further review of the record of trial by this Court, he might be better off to return to the civilian community and to such opportunities for gainful employment and other useful activities as may be available to him.

The accused's right to have this Court review his conviction was intended by Congress as a safeguard against illegal or improper action. It is, however, a privilege which the accused may or may not exercise as he sees fit. He has thirty days within which to act. To guard against an uninformed or improperly induced relinquishment of the privilege, we have held that a request like the one here cannot operate as a waiver of the accused's right to appeal. United States v Ponds, 1 USCMA 385, 3 CMR 119. However, if the accused desires to return as speedily as possible to the civilian community and to consider with his family and friends the advisability of an appeal, the privilege by itself is no bar to execution of the adjudged discharge. In other words, the fact that the accused still has time to decide whether he wants to appeal does not preclude his asking for execution of his sentence or make illegal the Government's action in complying with his request. The unexercised privilege of appeal is no bar to such an arrangement.

One other circumstance should be considered. Article 71(c) of the Uniform Code provides that "in cases reviewed" by this Court, a sentence which includes a punitive discharge cannot be executed until affirmed. In the *Ponds* case, supra, page 387, we observed that the provision constitutes the "only restriction against execution of any punitive discharge." We also pointed out that it operates "against the military authorities and in favor of a convicted accused." Nothing in the Article, however, requires the conclusion that the accused is prevented from asking for execution of the discharge before expiration of the time to appeal, to permit him to return to a civilian status and engage in civilian activities. If the request is granted, and the accused thereafter decides not to appeal to this Court, Article 71 is not operative and, consequently, it cannot affect the accused's separation or the character of his discharge. However, if the accused de-

564

cides to petition this Court for review, the characterization of the discharge as a bad-conduct discharge, as of that time and during the pendency of the appeal, is "contrary to the provisions of Article 71 . . . and of no legal effect." United States v Doherty, supra; see also Article 76, Uniform Code of Military Justice, 10 USC § 876. That is the risk the service takes. If the service is willing to take the risk, and the accused gains in the process, it distorts Article 71 to say that the original discharge execution is illegal. We hold, therefore, that under the facts of this case, execution of the punitive discharge did not violate the Uniform Code.

Careful consideration of the accused's petition for grant of review, and appellate defense counsel's thorough supporting brief, indicate no errors which prejudice the accused in any material respect. Accordingly, we affirm the decision of the board of review.

LATIMER, Judge (concurring):

I concur.

As the Chief Judge points out, execution of accused's bad-conduct discharge at his own behest prior to the expiration of the thirty-day period for filing a petition with this Court cannot operate to his detriment. Further, while I agree with the views announced in the principal opinion, I wish to add that implicit in our decision in United States v Doherty, 10 USCMA 453, 28 CMR 19, is the answer to the instant question. There the service, at accused's own request, accelerated the execution of his punitive discharge, but thereafter accused decided to petition this Court for review. See United States v Ponds, 1 USCMA 385, 3 CMR 119. We commented that during the pendency of his appeal, "characterization of the nature of . . . [accused's] discharge as 'dishonorable'," was improper. As I analyze the legal proposition, Article 71(c) of the Code, 10 USC § 871, only bars execution of the sentence if a case is reviewed by us. Based on an accused's request which indicates no appeal will be taken, execution may issue. When he changes his mind and petitions this Court within time, he in effect seeks to set aside the findings and sentence and execution of the latter. If his appeal is successful, execution of the sentence is recalled, and he may be restored to duty pending further action. If he fails and the sentence is affirmed, the form of the discharge is finalized. However, during the pendency of the appeal in this Court, consideration of the discharge as being punitive is improper. That principle was implicit in United States v Doherty, supra, for it is to be noted that the board of review in that case affirmed a sentence including dishonorable discharge, and we affirmed the board's decision. Manifestly, then, since there are no errors appearing in the record of this case which are materially prejudicial to accused's substantial rights, it follows that affirmance of the decision of the board of review is in order.

FERGUSON, Judge (concurring in the result):

I concur in the result.

Although the accused was convicted of a number of offenses, there now remain against him only findings of guilty of absence without leave and the malicious making of public statements attacking the armed service of which he was a member, in violation, respectively, of Uniform Code of Military Justice, Articles 86 and 134, 10 USC §§ 886, 934.

Following the board of review's affirmance of these findings of guilty, accused signed a request for the immediate execution of that portion of his sentence relating to bad-conduct discharge and asknowledged that he had been advised that his separation from the service would not preclude an appeal to this Court if it were seasonably filed. On January 3, 1959, the accused was discharged from the service with a bad-conduct discharge. On January 15, 1959, he petitioned this Court for a grant of review. We granted review on the issue of whether the execution of the bad-conduct discharge was legal.

In United States v Doherty, 10 USCMA 453, 28 CMR 19, we were advised in oral argument on other issues that the accused had been separated from the service. Subsequently, we

were informed that the separation was accomplished by means of a dishonorable discharge under circumstances similar to those here presented. Although the question was not then before us, we remarked in that case with regard to the early execution of the adjudged discharge as follows:

". . . The discharge here was issued in purported execution of the sentence of the court-martial. As such, at least from the time of the accused's petition for review, the characterization of the nature of the discharge as 'dishonorable' is contrary to the provisions of Article 71, Uniform Code, *and of no legal effect.* . . . *However, the exact legal effect of the act of separation, whatever its present characterization, need not be determined.*" [Emphasis supplied.]

Thus, it is apparent we reserved in United States v Doherty, supra, the question herein presented, and I am unable to agree with Judge Latimer's view that the conclusion of the majority was implicit in our affirming action in that case. I am also unable to join with Chief Judge Quinn in his conclusion that we may now breathe life into the illegally executed bad-conduct discharge without further action by the appropriate service authorities.

The execution of sentences which include a punitive discharge is governed by Code, supra, Article 71(c), 10 USC § 871 (c). That statute provides:

"(c) No sentence which includes, unsuspended, a dishonorable or bad-conduct discharge, or confinement for one year or more, may be executed until affirmed by a board of review *and, in cases reviewed by it, the Court of Military Appeals.*" [Emphasis supplied.]

In my opinion, Article 71(c) must be read in light of Code, supra, Article 67 (c), which sets forth our appellate jurisdiction and provides, *inter alia*, that:

"(c) The accused has 30 days from the time when he is notified of the decision of a board of review to petition the Court of Military Appeals for review. The court shall act upon

such a petition within 30 days of the receipt thereof."

Considered together, these sections of the Code compel the conclusion that the only practical interpretation of Code, supra, Article 71(c), is that a sentence involving an unsuspended punitive discharge or confinement for one year or more may not be executed until the expiration of the period in which the accused may petition this Court for a grant of review. That was my understanding of the *dictum* in United States v Doherty, supra, and that such was the intent of Congress in enacting Code, supra, Article 71(c) is established by the following comments in its legislative history:

"Mr. SMART . . .

· · · · ·

"Subdivision (c) is derived from A. W. 48 (c) and A. W. 50 (e). Sentences required to be affirmed by a board of review may not be ordered executed until such review and any further review by the Judicial Council [Court of Military Appeals] under article 67 is completed. Thus, such sentence *may be ordered executed 30 days after the accused has been notified of the decision of the board of review* if he has not petitioned the Judicial Council [Court of Military Appeals] for review within that period." [Emphasis supplied.] [Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1198.]

"Subdivision (c) is derived from AW 48 (c) and AW 50 (e). Sentences required to be affirmed by a Board of Review may not be ordered executed until such review and any further review by the Court of Military Appeals under article 67 is completed. *Thus, such sentences may be ordered executed 30 days after the accused has been notified of the decision of the Board of Review if he has not petitioned the court for review within that period.*" [Emphasis supplied.] [House of Representatives Report No. 491, 81st Congress, 1st Session, page 33.]

"Subdivision (c) is derived from AW 48 (c) and AW 50 (e). Sentences required to be affirmed by a Board of Review may not be ordered executed until such review and any further review by the Court of Military Appeals under Article 67 is completed. *Thus, such sentences may be ordered executed 30 days after the accused has been notified of the decision of the Board of Review if he has not petitioned the court for review within that period.*" [Emphasis supplied.] [Senate Report No. 486, 81st Congress, 1st Session, page 30.]

Similarly, in its review of the background of the Uniform Code of Military Justice, the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, Conference 7d, points out, at pages 152–153:

"If the accused does not forward his petition for a grant of review within 30 days, the officer then exercising general court-martial jurisdiction (or such other authority as may have been designated by the department) will publish a supplementary court-martial order which will refer to the initial order and order the sentence as affirmed or modified into execution. . . .

• • • • •

"If the Court of Military Appeals grants a review, no order of execution can be promulgated until the court has finally disposed of the case."

Indeed, the Manual for Courts-Martial, United States, 1951, itself implies that execution of the sentences enumerated in Code, supra, Article 71(c), is to be withheld until expiration of the period in which the accused is entitled to seek further judicial relief. Thus, in paragraph 100c, it states:

"The accused shall have 30 days from the time he is notified of the decision of a board of review to petition the Court of Military Appeals for a grant of review. *If the accused does not so petition,* the convening authority, or the officer immediately exercising general court-martial jurisdiction over the accused, or the

Secretary . . . concerned (Art. 60) may order any sentence which, as affirmed by the board of review, extends to dishonorable or bad conduct discharge or confinement for one year or more into execution. . . .

• • • • •

"*(c) If the accused forwards a timely petition for grant of review no supplemental order of execution will be promulgated until final action by the Court of Military Appeals is taken.*" [Emphasis supplied.]

The single inference that can be drawn from the foregoing authorities is that Congress, in enacting Code, supra, Articles 67(c) and 71(c), intended an accused receiving a sentence involving a punitive discharge or confinement for one year or more to have the opportunity fully to exercise his appellate remedies before his sentence was ordered into execution. Thus, the purported execution of the bad-conduct discharge in this case was in direct contravention of the Code and, insofar as its punitive characterization is concerned, was absolutely void.

The foregoing considerations do not indicate, however, a necessity for disapproval of any part of the sentence. While the execution of the discharge and the accused's request therefor establish that both the Marine Corps and he intended that he be immediately separated from the service, thus constructively ending his status as a member of the armed services, he remains subject to military law with respect to the disposition of this case. We have held that once jurisdiction attaches in a particular case, it continues until completion of appellate processes, regardless of any change in accused's status. United States v Speller, 8 USCMA 363, 24 CMR 173; United States v Robertson, 8 USCMA 421, 24 CMR 231. That rule applies as well to the execution of the sentence, and no impediment now appears to exist with respect to the characterization of accused's discharge in accordance with his conviction and sentence. Accordingly, I concur in the affirmance of the decision of the board of review, but I would also direct the revocation of the

void order purporting to execute accused's sentence in this case and the promulgation of a new order of execution subsequent to our decision herein.