CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**In Re:**
**Captain ELMO E. VANCE**
**United States Army**

ARMY 20180011

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Robert L. Shuck and Jacob D. Bashore, Military Judges
Colonel Maureen A. Kohn, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Major Todd W. Simpson, JA.

For Appellee:  Pursuant to A.C.C.A Rule 15.4, no response filed.


5 November 2018

-------------------------------------------------
OPINION OF THE COURT AND
ISSUANCE OF WRIT OF MANDAMUS
-------------------------------------------------

WOLFE, Senior Judge:

Today we consider what happens when, in violation of Article 60, Uniform Code of Military Justice (UCMJ),[1] the convening authority sets aside the findings and sentence in a case.  Notably, because Army regulations were not updated to reflect a Congressional amendment to Article 60, UCMJ, the convening authority's action was in compliance with Army regulations.  The convening authority's action was also specifically directed by the Deputy Assistant Secretary of the Army (Review Boards).

We conclude that the convening authority must take action on the findings and sentence in compliance with Article 60, UCMJ, and, accordingly, direct this action by issuance of a writ of mandamus.

---

[1] 10 U.S.C. §860 (2012 & Supp I 2014).

**BACKGROUND**

This case involves the intersection of the convening authority's power under Article 60, UCMJ, this court's authority under Article 66, UCMJ, and the Secretary of the Army's powers under Article 74, UCMJ. The following timeline summarizes the relevant events.

On 10 October 2017, Captain (CPT) Elmo E. Vance submitted a resignation for the good of the service in lieu of court-martial (RFGOS). On 26 October 2017, the convening authority forwarded the RFGOS to the Commander, Army Human Resources Command.[2] On 17 November 2017, CPT Vance submitted an offer to plead guilty to the convening authority. The offer was accepted on 22 December 2017.

On 17 January 2018, CPT Vance pleaded guilty to ten specifications of wrongfully using his government travel card to obtain cash advances,[3] being absent from his unit,[4] and taking convalescent leave for a surgery that did not occur.[5] The court-martial sentenced CPT Vance to a dismissal and forfeiture of $1,000 per month for three months.

About three months later, on 20 March 2018, the Deputy Assistant Secretary of the Army (Review Boards) (hereinafter "the Secretary's designee") accepted CPT Vance's RFGOS. The Secretary's designee issued a directive that CPT Vance be administratively discharged with an Under Other Than Honorable Conditions characterization of service and, as to the court-martial, "both findings and sentence, if any, be vacated."

---

[2] Captain Vance's chain of command all recommended disapproval of the resignation.

[3] The ten specifications alleged conduct that occurred between 19 November 2016 and 16 February 2017, charged as a violation of Article 92, UCMJ.

[4] Captain Vance's absence was from 28 February 2017 until 1 April 2017 and charged as a violation of Article 86, UCMJ.

[5] The charge, styled as a violation of Article 133, UCMJ, alleged that CPT Vance took convalescent leave from 14 February 2017 until 27 February 2017 after a surgery was postponed.

Consistent with the Army's military justice regulation,[6] the order was interpreted by the Staff Judge Advocate (SJA) as being directed to the convening authority. The SJA recommended that the convening authority disapprove the findings and sentence. On 29 March 2018, the convening authority followed the SJA's advice.

The case was received by the Clerk of Court, Army Court of Criminal Appeals under his role as the Army's custodian for all general courts-martial records of trial. The case was then referred on behalf of the Judge Advocate General to this court (and the appellate divisions) to determine whether the convening authority's action was lawful pursuant to Article 60, UCMJ, and, if necessary, for review pursuant to Article 66, UCMJ.

The Defense Appellate Division submitted the case without briefing, stating, "Appellant does not admit the findings and sentence are correct in law and fact." The Government Appellate Division provided no brief.

## LAW AND DISCUSSION

When an officer submits a RFGOS, the different authorities given to the convening authority and the Secretary of the Army may sometimes create tension over who will dispose of the charges. The convening authority determines whether to refer the case to trial. The Secretary of the Army (or the Secretary's designee) determines whether to accept the resignation. *See* Army Reg. 600-8-24, Personnel-General: Officer Transfers and Discharges, para. 3-13 (12 Apr. 2008; Rapid Action Revision 13 Sept. 2011). The question is "who gets to act first?"

This tension came to a head in the case of *United States v. Woods*, 26 M.J. 372 (C.M.A. 1988). In *Woods,* the accused submitted a RFGOS, but the Secretary's designee did not receive the resignation until after the convening authority had approved the findings and sentence. *Id.* at 373. The issue on appeal was whether the Secretary's subsequent approval of the RFGOS should be treated the same as if it had been approved pretrial. As our superior court stated, "It should be obvious that, if a Service Secretary has the authority to approve a resignation *in lieu of a trial,* the exercise of that authority should not depend upon a race between him and the convening authority to make a judgment." *Id.* at 374. Our superior court abated the proceedings and dismissed the findings and specifications. *Id.* at 375.

---

[6] Army Reg. 27-10, Legal Services: Military Justice [AR 27-10], para. 5-18 (11 May 2016).

Likely in response to *Woods*, the Army's military justice regulation currently provides guidance about deconflicting the action of the Secretary when considering a RFGOS and the convening authority's action when approving the findings and sentence. In summary, the regulation requires the convening authority withhold action in a case until after the Secretary acts on the resignation. *See* AR 27-10, para. 5-18.[7] If the resignation is approved, the regulation provides that the convening authority must, if directed by the Secretary's designee, disapprove the findings and sentence. *Id.*

Under this regulatory scheme, the convening authority's traditional Article 60, UCMJ, power was used to give effect to the Secretary's RFGOS decision as if it had been made pretrial. Under these procedures, the Secretary's designee could make a decision on the RFGOS without regard to when the court-martial took place. Regardless of whether the RFGOS was approved before or after trial, an approved RFGOS would be treated similarly. The fear of a "race" to a decision in *Woods* was prevented. Until recently, this regulatory compromise worked well. The statutory foundation for AR 27-10's regulatory compromise, however, relied entirely on the convening authority's ability to set aside the findings and sentence as a matter of command prerogative under Article 60, UCMJ. This foundation crumbled about four years ago.

*A. Article 60, UCMJ*

Effective on 24 June 2014, Congress amended Article 60, UCMJ, to drastically limit a convening authority's power to dismiss or set aside a finding of guilty or disapprove, commute or suspend certain parts of the sentence in certain instances.[8] One instance is relevant today. When the sentence includes a dismissal, the convening authority may not: 1) "[d]ismiss a charge or specification by setting aside a finding of guilty thereto;" or 2) "disapprove, commute or suspend, in whole or in part, that part of an adjudged sentence that includes . . . [a] dismissal." Rule for Courts-Martial (R.C.M.) 1107(c)(1)(B)(i) (action on findings); R.C.M. 1107(d)(1)(B)(ii) (action on sentence). There are two exceptions to this general

---

[7] This requirement first appeared in the 14 October 2002 version of AR 27-10. It appeared earlier in an Army personnel regulation. *See* Army Reg. 635-120, Personnel Separations: Officer Resignations and Discharges, para. 5-1b (1 May 1989) (IC 27 Sept. 1991).

[8] These limitations do not apply if the accused was convicted of at least one offense that occurred before the effective date of 24 June 2014. *See* Rule for Court-Martial 1107; Executive Order 13,696, 80 Fed. Reg. 35,810 (June 22, 2015). Based on the date of the offenses in this case, this limitation is not applicable.

prohibition, but neither is applicable to this case.[9] In other words, the convening authority in this case could not set aside the findings of guilty. Nor could the convening authority set aside the dismissal.

In *United States v. Alvin*, ARMY 20150353, 2017 CCA LEXIS 722 (Army Ct. Crim. App. 21 Nov. 2017), we faced a similar issue. There, the convening authority's initial action was contrary to Article 60, UCMJ, limitations and would have deprived this court of jurisdiction. After the action had been served on the accused, which terminated the convening authority's ability to reconsider the action adverse to the accused (*see* R.C.M. 1107(f)(2)), the convening authority issued a new (and legal) action. We determined that the first action, as it was illegal, was "void *ab initio*." *Alvin*, 2017 CCA LEXIS 722, at *6. While we noted precedent that prohibited the convening authority from revisiting an action in a manner adverse to the accused, we stated:

> To follow those precedents in a situation where the convening authority acts outside his authority would run squarely against Congressional intent as codified in the NDAA's changes to Article 60, UCMJ. Here, the statute expressly prohibits the convening authority from dismissing findings of guilty if the offense is one that carries a maximum punishment of greater than two years.

*Id.* at *5-*6. We concluded that to the extent that R.C.M. 1107 was in conflict with Article 60, "[w]e must give effect to the statute over the rule." *Id.* at *7.

We face a similar conflict today. The convening authority's action complied with AR 27-10, but was prohibited by the amendments to Article 60, UCMJ.[10] The convening authority was prohibited from setting aside any finding. The convening

---

[9] One exception is when the convening authority's action is in accordance with a pretrial agreement. *See* R.C.M. 1107(d)(1)(C)(ii). While there was a pretrial agreement in this case, it did not provide for the convening authority's action here. The other exception allows a convening authority to take favorable action on the sentence upon recommendation of the trial counsel in a case where an accused has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. *See* R.C.M. 1107(d)(1)(C)(i).

[10] This regulatory conflict with Article 60, UCMJ, still exists. *See* AR 27-10, para. 5-18; AR 600-8-24, para. 3-13*b*.

authority was also prohibited from setting aside the dismissal.[11]  Accordingly, we reach the same result as we did in *Alvin*, and determine that the convening authority's action was void *ab initio*.

### *B. Article 66, UCMJ*

This court is established by Article 66, UCMJ.  Our jurisdiction is limited, but in relevant part includes cases in which the sentence approved by the convening authority includes a dismissal.  UCMJ art. 66(b)(1).  As the convening authority purported to disapprove the findings and the sentence, it would facially appear that we lack jurisdiction over the case.  Article 66(c), UCMJ, similarly provides that we may "act only with respect to the findings and sentence as approved by the convening authority."

In *Alvin*, we speculated, in dicta, what would have happened if a convening authority's action violated Article 60 and thereby deprived this court of jurisdiction to hear the case:

> As we have the power to issue extraordinary writs to preserve our jurisdiction, this court could issue a writ of mandamus setting aside the first action and ordering a new action.  *See generally Howell v. United States*, 75 M.J. 386, 390 (C.A.A.F. 2016); [*United States v. Montesinos*, 28 M.J. 38, 42 (C.M.A. 1989)]; *Dettinger v. United States*, 7 M.J. 216 (C.M.A. 1979).

*Alvin*, 2017 CCA LEXIS 722, at \*7 n.7.  As we see it, according to Congress's amendment to Article 60, UCMJ, the convening authority's only authorized action was to approve the findings and the dismissal.  If the convening authority could not change the sentence, under the statutory scheme that results, review by this Court was mandatory once the sentence was determined by the court-martial.  Put differently, our mandatory review under Article 66(c), UCMJ, was triggered by the sentence to a dismissal, which the convening authority was prohibited from changing.

"[M]ilitary courts, like Article III tribunals, are empowered to issue extraordinary writs under the All Writs Act."  *United States v. Denedo*, 556 U.S. 904, 911 (2009) (citation omitted).  The All Writs Act grants the power to "all courts

---

[11] The convening authority's decision to set aside the forfeitures was permissible under Article 60, UCMJ.

established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

"The All Writs Act is not an independent grant of jurisdiction, nor does it expand a court's existing statutory jurisdiction." *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)). "Rather, the All Writs Act requires two determinations: (1) whether the requested writ is 'in aid of' the court's existing jurisdiction; and (2) whether the requested writ is 'necessary or appropriate.'" *Id.* (citation omitted). Our jurisdiction to issue a writ is limited to our subject-matter jurisdiction over the case or controversy. *See Denedo*, 556 U.S. at 911; *see generally* UCMJ art. 66. "To establish subject-matter jurisdiction, the harm alleged must have had 'the potential to directly affect the findings and sentence.'" *Kastenberg*, 72 M.J. at 368 (quoting *Ctr. For Constitutional Rights v. United States*, 72 M.J. 126, 128 (C.A.A.F. 2013)).

It speaks for itself that if an uncorrected illegal action serves to deprive this court of jurisdiction to perform a statutorily mandated review of the findings and sentence, a writ of mandamus directing the action be amended to conform with the law and allow for our review would be "in aid of [our] jurisdiction." *See* 28 U.S.C. § 1651.

### *C. Article 74, UCMJ*

In determining whether to issue a writ, we are required to determine whether a writ is necessary and appropriate. A writ directing a new convening authority action would not be "necessary" if the Secretary's designee acting on her own authority (i.e. not through the convening authority's Article 60, UCMJ, power) would cause us to end up at the same place – the findings of guilty and sentence set aside with nothing for this court to review. Accordingly, we briefly discuss the intersection of Article 66, UCMJ, and Article 74, UCMJ.[12]

---

[12] Nothing in this opinion should be construed as limiting the Secretary's authority to act under Article 74, UCMJ, or any other authority. We review the actions of the convening authority, not the Secretary. Under 10 U.S.C. § 3013, the Secretary of the Army has broad authority over Army affairs. The Secretary does **not**[*] need the convening authority's Article 60, UCMJ, authority in order to execute the Secretary's lawful authority.

[*] Corrected

Article 74, UCMJ, provides the Secretary of the Army with two broad powers relevant to this case. First, under Article 74(a), UCMJ, the Secretary's designee may remit or suspend any part of an *unexecuted* sentence.[13] Second, under Article 74(b), UCMJ, the Secretary's designee may, "for good cause," substitute an administrative discharge for a dismissal. Under Article 74, UCMJ, the Secretary's designee may remit CPT Vance's dismissal or substitute the dismissal with an administrative discharge.[14] So, it is conceivable that the Secretary of the Army, acting through a designee, could today do, in part, exactly what the Deputy Assistant Secretary of the Army (Review Boards) purported to do in accepting the RFGOS. That is, the Secretary of the Army or an official with delegated authority could remit the dismissal or substitute therefore an administrative discharge.

But, this court's jurisdiction over a case does *not* change when the Secretary's designee remits a dismissal or substitutes an administrative discharge for that punishment under Article 74, UCMJ. *See Steele v. Van Riper*, 50 M.J. 89 (C.A.A.F. 1999). [T]he power of review authorities over the court-martial is unaffected by the administrative discharge." *Id.* at 91; *see also Woods*, 26 M.J. at 372; *United States v. Jackson*, 3 M.J. 153 (C.M.A. 1977); *United States v. Entner*, 15 U.S.C.M.A. 564, 36 C.M.R. 62 (1965); *United States v. Speller*, 8 U.S.C.M.A. 363, 24 C.M.R. 173 (1957); *United States v. Sippel*, 4 U.S.C.M.A. 50, 15 C.M.R. 50 (1954); *United States v. Watson*, 69 M.J. 415, 416 (C.A.A.F. 2011) ("A post-trial administrative discharge operates to remit the unexecuted punitive discharge portion of an adjudged court-martial sentence."); *United States v. Soto*, No. 201500384, 2016 CCA LEXIS 517, *4 n.2 (N.M. Ct. Crim. App. 2016) (An appellant's prior "discharge through administrative channels" does not affect the power of appellate tribunals to act on the findings and sentence under Article 66(b)(1), UCMJ.).

In other words, the exercise of Secretarial authority (whether under Article 74, UCMJ, or another source), does not alter this court's obligations under Article 66, UCMJ. While this court's Article 66, UCMJ, jurisdiction turns on the accused's sentence, it is based on the sentence *approved by the convening authority* under Article 60, UCMJ, not on the sentence as modified by the Secretary's designee.

Even if we were to find the RFGOS decision by the Deputy Assistant Secretary of the Army was a *de facto* exercise of the Secretary's Article 74, UCMJ,

---

[13] There are limitations on this authority, not applicable here, when the sentence includes confinement for life without the possibility of parole.

[14] Secretarial power under Article 74, UCMJ, appears to extend only to the sentence, and does not include the ability to set aside findings of guilt.

authority with regards to the dismissal, the result here would be the same because that would not alter our jurisdiction to consider this case.

**CONCLUSION**

The convening authority cannot set aside the findings and the sentence to a dismissal in this case. Nor do we see any authority that would allow the Secretary's designee to direct the convening authority to dismiss the findings and the sentence when Congress has specifically prohibited just that action. We therefore conclude that the convening authority's action in this case was invalid at the time it was signed and void *ab initio*.

We therefore issue this writ of mandamus directing the convening authority to take action on this case in the manner required under Article 60, UCMJ. This writ is issued "in aid" of our statutory responsibility to review the findings and sentence in this case. The substance of this writ – requiring the convening authority to comply with the law – is not only "necessary and appropriate," but the only method available to this court to ensure it is able to discharge its responsibilities under Article 66, UCMJ.

Accordingly, we direct the Clerk of Court to return the record of trial to the convening authority for a new staff judge advocate review and action by the convening authority.[15]

Judge SALUSSOLIA and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[15] Our decision here is limited to saying that the case requires a convening authority action that complies with Article 60, UCMJ. We save for another day our decision whether the findings and sentence in this case should be affirmed. *See* UCMJ, art. 66(c).